# ORIGINAL

# In the United States Court of Federal Claims

No. 12-447C

Filed: February 15, 2013

FILED

FEB 15 2013

U.S. COURT OF
FEDERAL CLAIMS

\* \* \* \* \* \* \*

| | |
|---|---|
| JOSSY BERGAN, | * Fraudulent Investment; Ponzi Scheme; |
| | Civil Forfeiture; Remission; Jurisdiction; |
| Plaintiff, | * *Pro Se* Plaintiff; Transfer of Action |
| v. | * |
| THE UNITED STATES OF AMERICA, | * |
| Defendant. | * |

\* \* \* \* \* \* \*

*Jossy Bergan*, Valley City, North Dakota, *pro se.*

*Kenneth David Woodrow*, United States Department of Justice, Civil Division, Washington, D. C., for defendant.

## OPINION AND TRANSFER ORDER

**YOCK**, Judge.

On July 18, 2008, Plaintiff Jossy Bergan invested $10,000 into a fraudulent business, AdSurf Daily. After investigation and prosecution by the Department of Justice, United States District Judge Rosemary M. Collyer issued three orders resulting in the seizure of $79 million in funds from bank accounts, as well as various pieces of real property and personal property. The funds were seized based on 18 U.S.C. § 981(a)(1)(C), which authorizes civil forfeiture of proceeds traceable to wire fraud, and 18 U.S.C. §981(a)(1)(A) which permits forfeiture of property involved in a money laundering scheme. On the order of Judge Collyer, $14 million of that amount was ordered forfeited to the Federal Government on Wednesday, March 31, 2010. The Government agreed to return that money to the investors through the remission process. Rust Consulting, hired to administer the remission process, sent out claims forms to the defrauded investors; these forms were required to be returned before January 20, 2011. The details on the specifics of this program, including how investors were found and contacted, and how many were involved, are lacking from the pleadings in this case. Plaintiff claims that she never received notification of this process, nor did she ever receive the necessary forms to claim her share of the seized funds. Plaintiff later became aware of the opportunity to reclaim her

investment. On February 21, 2012, Ms. Bergan filed a remission form and an explanation for late filing. Neither Plaintiff nor Defendant explicitly says what response was given to Ms. Bergan or even whether her late remission form was received or acknowledged.

Plaintiff's complaint was filed with the United States Court of Federal Claims on July 19, 2012. Judge Baskir issued a special procedural order on July 31, 2012, which prohibited the parties from filing dispositive motions before a preliminary status report was conducted. However, the case was reassigned from Judge Baskir to Judge Yock on October 11, 2012, and Judge Yock subsequently suspended the Special Procedural Order and allowed Defendant to file a Motion to Dismiss on November 20, 2012.

Jurisdiction is a "threshold" issue that must be addressed first: "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (quoting Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 382 (1884)). The Court has a duty to assure itself that it has jurisdiction over the subject before addressing the merits of any complaint. Hambsch v. United States, 857 F.2d 763, 765 (Fed. Cir. 1988), cert denied, 490 U.S. 1054 (1989).

Complaints filed by *pro se* plaintiffs are generally held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium). The contents of documents and motions submitted *pro se* are "to be liberally construed . . . and a *pro se* complaint, however inartfully [sic] pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Despite this leniency, *pro se* plaintiffs must still meet jurisdictional requirements. Kelley v. Sec'y U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed Cir. 1987). If the Court determines that it does not have jurisdiction, it must dismiss the action. RCFC 12(h)(3).

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, which gives jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon an express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 149(a)(1). The Tucker Act itself does not confer any substantive rights upon a plaintiff. United States v. Testan, 424 U.S. 392, 398-401, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976). Instead, a Plaintiff is required "to identify a substantive right for money damages against the United States separate from the Tucker Act." Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

In this case, the U.S. Court of Federal Claims lacks subject matter jurisdiction over Plaintiff's claims due to specific statutory considerations. 28 USCS § 1355(a) states that **"The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture,**

2

pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title." This language indicates that if an action is initiated in order to recover forfeited assets, it must be brought in the U.S. District Court. When Congress provides "a specific and comprehensive scheme for administrative and judicial review [in a district court], . . . the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." Vereda, LTDA. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001). In a case disputing forfeiture of seized assets, the U.S. Court of Appeals for the Federal Circuit ruled that the U.S. Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act. 5 U.S.C. §§ 701-706 (1994)" Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997). The opinion continued to state that:

> "The relief that Crocker wants **requires that a district court evaluate the adequacy of notice** provided before the agency ordered her assets forfeited, and it requires that the reviewing court fashion equitable relief if any is called for. The Tucker Act provides jurisdiction in the Court of Federal Claims to recover 'exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere).' Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (citing South Puerto Rico Sugar Trading Corp. v. United States, 167 Ct. Cl. 236, 334 F.2d 622, 626 (Ct. Cl. 1964)). Congress has unambiguously allocated these judicial activities to the district courts."

(emphasis added) Id. at 1477. As in Crocker, Plaintiff in this case seeks review of the Department of Justice's administration of a remission program, and in particular, the procedures for providing notice to parties affected by the civil forfeiture. Given the broadly inclusive language of 28 USCS § 1355(a), Plaintiff's position as investor instead of the former owner of the assets does not seem to be a significant distinction in determining jurisdiction over her claims; District Courts have adjudicated cases in the past in which investors sought to challenge how the assets were distributed. See, e.g., SEC v. Huber, 2012 U.S. App. LEXIS 24547 (7th Cir. Ill. Nov. 29, 2012) (Challenging the use of the "Rising Tide" method to apportion funds to investors). Furthermore, the U.S. Court of Federal Claims has addressed these similar facts in Wayne v. United States, in which the plaintiff pleaded an unlawful taking of the forfeited property relating to the seizure of Adsurf Daily's assets; that decision agreed that "the plain language of 28 U.S.C., §1355(c) grants exclusive jurisdiction over civil forfeitures to federal district courts." Wayne v. United States, 95 Fed. Cl. 475, 478 (Fed. Cl. 2010).

The U.S. Court of Federal Claims also does not exercise jurisdiction here because return of forfeited property is an equitable remedy, which the Court does not have jurisdiction over. See, e.g. Bowen v. Massachusetts, 487 U.S. 879, 108 S. Ct. 2722, 2732-33, 101 L. Ed. 2d 749 (1988) (defining an equitable remedy in part as an action for specific relief "which may include

an order . . . for the recovery of specific property"). Furthermore, "a party's request for money damages in the alternative to equitable relief does not alone alter the equitable character of the relief requested." Marshall Leasing v. United States, 893 F.2d 1096, 1099 (9th Cir. Or. 1990). Therefore, because Plaintiff is specifically asking for the return of a particular item (her investment), it is a request for equitable relief even if it takes the form of money damages.

The requirements for transferring a case state that: "whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631 (2006). The phrase "in the interest of justice" has been interpreted by the Federal Circuit to mean those "which are nonfrivolous and as such should be decided on the merits." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987).

Defendant's motion to dismiss emphasizes the lack of a fiduciary relationship between the two parties, given that the Government has discretion to decide what to do with forfeited assets. Previous cases have indeed held that investors lack standing to bring a claim in civil forfeiture actions because they lack a property interest. United States v. Real Property Located at 730 Glen-Mady Way ("Glen-Mady"), 590 F. Supp. 2d 1295, 1303 (E.D. Cal. 2008). The purpose of disallowing investors to intervene in actions where property is being forfeited is because "the individual rights of victims to restitution already are protected through the remission process set forth by Congress in the civil forfeiture statue." United States v. Approximately $133,803.53 in United States Currency Seized from Wash. Mut. Bank, N.A., 683 F. Supp. 2d 1090, 1095 (E.D. Cal. 2010).

The remission process is governed by 18 U.S.C. § 981, and, as interpreted by Department of Justice regulations in 28 CFR 9.1 § 981(f), states that "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." Furthermore, § 981(e) states that "the Attorney General . . . is authorized to retain property forfeited pursuant to this section, **or to transfer such property on such terms and conditions as he may determine,**" (emphasis added) and § 981(e)(6) specifies that the Attorney General may distribute the seized funds "as restoration to any victim of the offense giving rise to the forfeiture, including, in the case of a money laundering offense, any offense constituting the underlying specified unlawful activity."

The unsettled question in the instant case is whether the procedures to remit these funds were properly followed in first attempting to notify Ms. Bergan of her potential claim, and second in the subsequent filing of her late remission forms. A court's ability to review remission or mitigation petition proceedings is limited since "the remission of forfeitures is neither a right nor a privilege, but an act of grace." In re Sixty Seven Thousand Four Hundred Seventy Dollars, 901 F.2d 1540, 1543 (11th Cir. Ala. 1990) (citing United States v. One 1961 Cadillac, 337 F.2d

730, 733 (6ᵗʰ Cir. 1964); <u>Arca Airlines, Ltda. v. United States Customs Serv.</u>, 726 F. Supp. 827, 830 (S.D. Fla. 1989), *aff'd*, 945 F.2d 413 (11ᵗʰ Cir. 1991); <u>LaChance v. Drug Enforcement Admin.</u>, 672 F. Supp. 76, 79 (E.D.N.Y 1987)). However, federal courts do have jurisdiction "when the agency does not even consider a request that it exercise its discretion." <u>Matter of $67, 470.00</u>, 901 F.2d at 1544. In such cases the petitioner must specifically claim that the agency has taken no action on the petitioner's request for remission or mitigation. <u>Id</u>. Courts may also exercise jurisdiction where an agency violates its own regulations for dealing with administrative forfeitures. <u>Sammons v. Taylor</u>, 967 F.2d 1533, 1548-49 (11ᵗʰ Cir. 1992). Based on the limited facts presented here, and taking all of Plaintiff's statements to be true when considering a motion to dismiss, it is plausible that either the Department of Justice took no action on Plaintiff's request for remission, or that the agency violated its own regulations for remitting seized assets. Both of these instances may give rise to jurisdiction over Ms. Bergan's claims.

When considering a motion to dismiss, the issue is not whether the plaintiff ultimately will prevail; it is whether the plaintiff is entitled to offer evidence to support facts alleged in the complaint. <u>Boyle v. United States</u>, 44 Fed. Cl. 60 (Fed. Cl. 1999). To avoid dismissal for a failure to state a claim upon which relief can be granted, the pleadings "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." <u>May v. United States</u>, 80 Fed. Cl. 442, 448 (Fed. Cl. 2008). Because plaintiff's claims may have merit if backed by evidence and are sufficiently above the speculative level, it is in the interest of justice to transfer this case to District Court.

Plaintiff's allegations were carefully considered and granted all latitude given to those parties filing *pro se*. Nevertheless, none of her claims come within the jurisdiction of this court. However, Plaintiff's claim potentially has merit, and it is in the interest of justice for this case to be TRANSFERRED to U.S. District Court for the District of North Dakota.

IT IS SO ORDERED.

*Robert J. Yock*

Robert J. Yock
Senior Judge
United States Court of Federal Claims

A TRUE COPY:
TEST:

Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By _____
Deputy Clerk